GEORGE MICKLE, Executor of SAMUEL MICKLE, deceased, v. JOHN RAMBO and others.

Where A. has a first mortgage on two lots, and B. takes a second mortgage on the first lot only ; he may, as between him and the first mortgagee, compel the satisfaction of the first mortgage out of the second lot, as far as the proceeds will go.

A release, afterwards given, by the first mortgagee to the mortgagor, of all his interest in the second lot, will not prejudice the second mortgagee, unless he assented to it.

The purchaser of the equity of redemption of the first lot, subject to both mortgages, in order to redeem, would have to pay the whole of the second mortgage covering the first lot only, and a rateable portion of the first mortgage on both lots, according to the value of the two lots.

Upon a subsequent sale of the first lot, on a bill filed by the first mortgagee, the proceeds are to be applied to satisfy, first, a rateable portion of the first mortgage, then the whole of the second mortgage, and subsequent incumbrances on the first lot in their order.

THE following facts appear by the pleadings and evidence :—

1. On the 7th March, 1815, Apollo Woodward gave a mortgage to Samuel Mickle for one thousand dollars, on two lots in Gloucester county, the first being a tavern lot in Woodbury.

2. On the 5th April, 1818, Woodward gave a mortgage to Joseph Shinn, for twelve hundred dollars, on the tavern-house and lot; which mortgage was afterwards assigned to James Cook.

3. On the 26th December, 1818, Woodward sold the equity of redemption in the tavern-house and lot to Marmaduke Wood, subject to the two mortgages.

4. On the same 26th December, 1818, Wood gave to Woodward a mortgage on the same tavern-house and lot for one thousand dollars.

5. On the 1st May, 1819, Mickle, the first mortgagee, released to Woodward all his interest under the mortgage in and to the second lot mentioned in his mortgage ; which lot was afterwards sold and conveyed by Woodward to various purchasers.

6. On the 29th August, 1820, Wood gave to Rambo a mort-

gage on the tavern-house and lot for fourteen hundred and seventy-six dollars and eleven cents : And,

7. On the 1st September, 1820, Wood executed to Rambo an assignment of all his property, in trust, for the benefit of creditors.

Mickle, the executor of the first mortgagee, has filed his bill to sell the mortgaged premises.

The only defendant who has answered is John Rambo. He states in his answer, that the lot released by Mickle to Woodward was worth twelve hundred dollars ; and that when he, (Rambo,) took his mortgage, he did not know of the release. He insists that the whole value of the released property must be deducted from Mickle's mortgage, and the balance only be raised out of the tavern-house and lot.

The tavern-house and lot have been sold, under an order of the orphan's court, for the sum of three thousand seven hundred dollars ; and the master, pursuant to directions given him, has reported that the value of the second lot, released by Mickle, at the time of the release, was one thousand and fifty dollars, and that the relative value of the two lots is as seven to one ; or, in other words, that the first mentioned lot, being the tavern-lot, is worth seven times as much as the other.

*Wall*, for complainant ;

*Armstrong*, for defendant.

THE CHANCELLOR. It is submitted to the court to direct the disposition of the money, and this must depend on the operation to be given to the release.

Mickle's mortgage covered the whole property, including both lots. Shinn's mortgage covered the first lot only. If the controversy was between these two mortgagees, on general principles, and independently of any release, Shinn would have a right to compel the satisfaction of Mickle's mortgage out of the second lot, if sufficient to satisfy it ; and if not, to have the proceeds of the lot appropriated to that purpose, as far as they would go. Nor would the release affect the rights of Shinn un-

less he assented to it, for the value of the property thus released would be ordered to be deducted from Mickle's mortgage.

But the controversy is between other parties; neither Shinn, nor his assignee, Cook, claim any special rights.

Rambo claims under Wood, who stood at the time he gave the mortgage to Rambo, and made the assignment of his property to him, as the purchaser of the tavern-house and lot, subject to the two mortgages to Mickle and Shinn. If as such purchaser, he had sought to redeem that lot, he would have had to pay the mortgage to Shinn, and also a proportion of Mickle's mortgage, according to the relative value of the two lots. He could have compelled the second lot to pay its proportion only, according to its value, and could have had no right in equity to throw the whole burden of the mortgage on that part of the property.

Such was the right of Wood. Rambo claims under him, and stands in his place. And Mickle having released his interest in the second lot, the proportion of his mortgage which that lot was liable to pay, must be deducted from the amount now due him by the report of the master. This proportion is ascertained to be the one-seventh part.

There is no evidence to show that Shinn was consenting to the release, and therefore his rights, or those of his assignees, are not affected by it.

I do not perceive that the case is varied by the fact that Marmaduke Wood, in 1819, after his purchase, engaged to pay Mickle's bond. This does not destroy the claim of Mickle on his mortgage. It is doubtful from the instrument itself, whether it was intended for the benefit of Mickle or Woodward. If for Mickle, it was adding the personal security of the purchaser to that of the mortgagor. If for Woodward, it was in the nature of an indemnity. Taken either way, Mickle's claim on his mortgage is not affected by it.

Let the one-seventh part of Mickle's mortgage be deducted, and the balance be satisfied out of the fund, together with costs, and let the residue be applied to the succeeding incumbrances in their order.